UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **AMBER SWINK** | * | CASE NO. |
| 11766 S. Wolf Creek Pike | | |
| Brookville, Oh 45309 | * | JUDGE |
| | | Magistrate |
| Plaintiff | * | |
| | | |
| vs. | * | |
| | | |
| **MONTGOMERY COUNTY BOARD** | * | |
| **OF COMMISSIONERS** | | |
| 451 W. Third St. | * | |
| Dayton, Ohio 45422 | | |
| | * | |
| and | | |
| | * | |
| **PHIL PLUMMER, SHERIFF** | | |
| **MONTGOMERY COUNTY SHERIFF** | * | |
| 345 W. Second St. | | |
| Dayton, Ohio 45422 | * | |
| | | |
| and | * | |
| | | |
| **JUDITH L. SEALEY, CAPTAIN** | * | |
| **MONTGOMERY COUNTY SHERIFF** | | |
| 345 W. Second St. | * | |
| Dayton, Ohio 45422 | | |
| | * | |
| and | | |
| | * | |
| **CHUCK CROSBY, CAPTAIN** | | |
| **MONTGOMERY COUNTY SHERIFF** | * | |
| 345 W. Second St. | | |
| Dayton, Ohio 45422 | * | |
| | | |
| and | * | |
| | | |
| **ANY AND ALL OTHER JANE AND/OR** | * | |
| **JOHN DOES**, whose identities are not yet | | |

| | |
|---|---|
| **known but shall be ascertained through discovery** | * |
| | * |
| **Defendants** | |

Plaintiff Amber Swink, by and through their attorney, hereby allege the following as their Complaint:

## JURISDICTION

1. This Honorable Court has jurisdiction over all claims presented herein pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1983 and § 1988, and has pendant jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

2. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, under Federal law, particularly the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988 and Ohio common law.

## VENUE

3. Venue is appropriate under 28 U.S.C. § 1391(b) and Fed.R.Civ.P. 4 and 17(b), Chapter X, S.D. Ohio Civ. R. 82.1 as all events giving rise to these causes of action occurred within the geographical jurisdiction of this Court.

## PARTIES

4. Plaintiff Amber Swink, at all times relevant to this complaint, is a natural person residing at 11766 S. Wolf Creek Pike, Brookville, Ohio 45309 and a resident of Montgomery County, Ohio.

5. Defendant Montgomery County Board of Commissioners, made up of three duly elected commissioners, is the body elected to govern the affairs of Montgomery County, Ohio pursuant to the Ohio Revised Code and is located within the geographical jurisdiction of this Court.

6. Defendant Sheriff Phil Plummer is an Ohio law enforcement officer and duly elected Sheriff of Montgomery County.

7. Sgt. / Capt. Judith L. Sealey is an Ohio law enforcement officer and is an agent and servant of the Montgomery County Sheriff's Office and the Sheriff of Montgomery County.

8. Capt. Charles Crosby is an Ohio law enforcement officer and is an agent and servant of the Montgomery County Sheriff's Office and the Sheriff of Montgomery County.

9. Defendant(s) John and/or Jane Doe is (are) persons and entities whose identities shall be determined during discovery whose acts and omissions were willful, negligent, grossly negligent, reckless, and were deliberately indifferent to the health, safety, and welfare of Plaintiff. This complaint shall be amended pursuant to Federal Rule of Civil Procedure 15 as their identities are discovered.

10. Each of the individually named defendants is sued individually and in their official capacities, unless otherwise alleged.

11. Each of the individually named defendants were, at all times relevant, acting under color of state law and on behalf of the Board of County Commissioners of Montgomery County, Ohio, Sheriff Phil Plummer, and/or the State of Ohio.

## FACTS COMMON TO ALL ALLEGATIONS

12. On November 15, 2015 at approximately 1750 hours Sgt. W. Wortman of the Perry Township Police Department, Ofc. J. Corcoran of the Perry Township Police Department and Ofc. A. Scott Clay Township Police Department responded to a call concerning a domestic dispute at 4629 Sulfur Springs Road in the City of Brookville, County of Montgomery, State of Ohio.

13. Plaintiff Amber Swink was present at that address with her boyfriend, Thomas Pinney along with the home's owner, Louise Crow, and had consumed alcoholic beverages that evening and was intoxicated.

14. Ofc. Corcoran subsequently asked Plaintiff Amber Swink to step outside and when she refused and started to close the door he grabbed her by the wrist, took her to the ground, put her in handcuffs and placed her in the back of his police cruiser.

15. During this arrest Ofc. Corcoran's glasses fell to the ground were damaged.

16. Ofc. Scott then opened the door to the police cruiser to inform Plaintiff Amber Swink that she was being arrested and that temporary arrangements would need to be made for the custody of her son.

17. When Ofc. Scott told Plaintiff Swink to put her feet back inside the police cruiser she refused to do so and when the officer went to physically place her feet back in the cruiser she kick at the officer with her left foot, which caused no injury to the officer but made contact with him.

18. After placing Plaintiff Swink back in the rear of the police cruiser, Ofc. Scott retrieved leg restraints from his trunk, pulled Plaintiff Amber Swink back out of the police cruiser with the assistance of Sgt. Wortman, placed the leg restraints on her and then placed her back in the rear of the police cruiser.

19. Ofc. Scott then transported Plaintiff Amber Swink to the Montgomery County Jail in the City of Dayton.

20. Despite being manhandled by much larger officers, Plaintiff Amber Swink was unharmed prior to arriving at the Montgomery County Jail in Dayton.

21. At all times relevant herein, Plaintiff Swink was twenty-four years old, was five foot two inches tall and weighed approximately one hundred and thirty pounds.

22. While enroute to the Montgomery County jail and/or at the jail, Ofc. Scott notified Montgomery County jail staff, including Defendant Sgt. Judith Sealey, that Plaintiff Amber Swink was intoxicated and that she exhibited a belligerent attitude.

23. Upon information and belief, Defendant Sealey was aware of Plaintiff's intoxicated state and belligerent attitude, but was also aware that, subdued, handcuffed, in leg restraints and in custody, she posed no threat to herself or others around her.

24. At all times relevant herein Defendant Sealey was the highest ranking member of the Montgomery County jail staff and was the supervisor of the jail at the time Plaintiff Amber Swink was brought into their custody.

25. Once they arrived at the Montgomery County Jail, Plaintiff Amber Swink remained handcuffed as Defendants took Plaintiff into their custody and escorted her to a booking area inside the jail.

26. Plaintiff Amber Swink was subsequently relocated in holding cell #123 where it was reported that she was continuing to act belligerent, continued screaming and banging on the glass.

27. Defendant Sealey then warned Plaintiff Amber Swink that if she did not cease her actions of banging on the door and causing a disturbance she would be sprayed with OC spray a/k/a pepper spray.

28. Immediately thereafter, Defendant Sealey ordered Plaintiff Amber Swink's cell door open and delivered a significant amount of OC spray into her cell, on her person and in her face which debilitated the Plaintiff and caused her to stop any belligerent conduct upon which the cell door was closed.

29. Defendant Sealy stated that the OC spray "had its desired effect" and had caused the Plaintiff to stop causing a disturbance.

30. It is the policy of the Montgomery County Jail to use a hand held video camera to record any use of force used upon an inmate.

31. Defendant Sealy intentionally did not use or allow any other officer(s) to record her use of the OC spraying of Plaintiff Swink with a hand held video camera in violation of the policy.

32. Despite the fact the Plaintiff Amber Swink was no longer causing a disturbance, Defendant Sealey further ordered Corrections Officers M.K. Klumb and L.J. Jenkins to place Plaintiff Amber Swink in a full restraint chair.

33. Per Defendant Sealey's orders Corrections Officers M.K. Klumb and L.J. Jenkins brought the restraint chair to the area of Plaintiff's cell.

34. Corrections Officers M.K. Klumb and L.J. Jenkins then ordered Plaintiff Amber Swink to lay on the ground while the cell door was still closed, to which she complied.

35. After Plaintiff Amber Swink was laying on the ground Officers M.K. Klumb and L.J. Jenkins opened the cell door, placed her in handcuffs and escorted her into the restraint chair where she was then strapped into the chair prohibiting her from moving.

36. Officers M.K. Klumb and L.J. Jenkins, per the orders of Defendant Sealey, then wheeled Plaintiff Amber Swink into an isolation room, MHD-131, where she was left fully restrained, handcuffed and isolated in the chair for over an hour and a half.

37. After an hour and a half of being left in the restraint chair and unable to move, Plaintiff Amber Swink started yelling.

38. Shortly thereafter Defendant Sealey went into Plaintiff Amber Swink's cell with another can of OC spray and intentionally and maliciously sprayed Plaintiff Amber Swink's face and body with the OC spray until she became unconscious and suffer permanent, serious, and debilitating injuries.

39. After an unknown period of time the Montgomery County jail medic, Connor Matlock, was summonsed to Plaintiff's cell where he found her unconscious and unresponsive with all seven of the chair restraints properly secured.

40. In an effort to revive Plaintiff Amber Swink, the medic performed sternal rubs and administered other stimuli until she regained consciousness and could respond to verbal commands upon which time he left the cell where she still remained restrained in the chair.

41. Medic Matlock was later requested to return to Amber Swink's cell where he checked her pulse and decontaminated some of the OC spray from Plaintiff Amber Swink's face.

42. Sometime thereafter, Plaintiff Amber Swink was removed from the restraint chair and placed back into the general population without further incident.

43. The OC spraying in the first cell, use of the restraint chair and second OC spraying while the Plaintiff was restrained in the restraint chair constituted brutal and excessive force, was cruel and unusual and was not a proportionate response to Plaintiff's actions while in the Defendants' custody. Defendants, jointly and severally, exhibited deliberate indifference concerning the amount of force they applied on the Plaintiff.

44. A reasonably competent police officer and/or corrections officer would not consider the use of the amount of force, under these circumstances, reasonable.

45. Defendants were within the course and scope of their employment during all times relevant to Plaintiff's complaint, acting under the direction and orders of their superior officers, and acting pursuant to established policies, procedures, customs, supervision and past practices of the Montgomery County Sheriff's Office, the Sheriff of Montgomery County, and the State of Ohio.

46. As a result of Defendants' actions, Plaintiff has been required to seek various therapies. Her injuries are permanent and debilitating. Plaintiff has suffered and continues to suffer from loss of enjoyment of life, humiliation, severe emotional distress, and economic injuries, including loss of income and losses due to medical care she has been required to receive as a result of the injuries.

47. At the time Plaintiff Amber Swink was assaulted with the OC spray and placed in the restraint chair, Defendant Sealey held the rank of a Sargent, but had already been informed by Sheriff Phil Plummer that she would be promoted to the rank of Captain.

48. The reason why Defendant Sealey was set to be promoted was political and racially motivated due to the fact that she is a black female.

49. Defendant Sealey's promotion to the rank of Captain was set into motion months prior to the assault of Plaintiff Amber Swink and stemmed from a complaint made by Mr. Derrick Forward, President of the Dayton Chapter of the National Association for the Advancement of Colored People (NAACP) which had alleged that several white employees of the Montgomery County Sheriff's privately made multiple racially derogatory text messages on their personal cell phones.

50. The complaint and allegations levied by the NAACP became public and caused damaging publicity to Sheriff Phil Plummer and the Montgomery County Sheriff's Department.

51. As a result of the racial complaint and allegations Montgomery County Sheriff's Captain Thomas Flanders and Detective Michael Sollenberger were terminated from employment and a "back door" deal was made to promote Defendant Sealey as reparations for the text messages in order to conciliate the NAACP.

52. Shortly after the assault of Plaintiff Amber Swink, several sergeants working in the Montgomery County jail who either witnessed the assault and excessive use of force or had heard about the wrongful conduct of Defendant Sealey reported said wrongful conduct to Defendant Capt. Chuck Crosby, who was the direct supervisor over Defendant Sealey and also had the responsibility of overseeing the operations in the Montgomery County jail.

53. Defendant Crosby allegedly began an investigation into the assault of Plaintiff Amber Swink as a result of the complaints received by the corrections officers.

54. As part of his duties, Defendant Crosby is responsible for investigating all incidents in which a "use of force" was used.

55. While investigating the complaints made by the corrections officers, Defendant Crosby reviewed the videotape of the OC spray assault of Plaintiff Amber Swink when she was in isolation cell MHD-131.

56. Upon viewing the videotape, Defendant Crosby knew or should have known that excessive force was used against Plaintiff Amber Swink, that Defendant Sealey had in fact committed the crime of assault against Plaintiff Amber Swink, that Defendant Sealy had violated the Use of Force policy of the Montgomery County Sheriff's office and that there was a high probability that there would be litigation regarding this incident in the form of a criminal prosecution of Defendant Sealey and/or a civil action brought by Plaintiff Amber Swink and/or internal disciplinary actions against Defendant Sealey.

57. There is a dedicated video security camera in isolation cell MHD-131 that constantly records the inmate in that cell onto the memory/tape/hard drive of the camera system(s) used within the Montgomery County jail.

58. The Ohio Department of Rehabilitation and Corrections standards require that any inmate restrained in a restraint chair be monitored in ten (10) minute intervals.

59. There is also a policy that requires that when an inmate is restrained in a restraint chair that they are constantly monitored and this is often done through the use of the video security camera in isolation cell MHD-131, as it was in this case with Plaintiff Amber Swink.

60. Furthermore, when a use of force is utilized against an inmate (deploying OC spray is a use of force) it is the policy of the Montgomery County Sheriff's Office to permanently save that video on the memory/tape/hard drive of the camera system(s) used within the Montgomery County jail and also burn the video to a computer disc to be kept separately for a period of not less than seven (7) years.

61. The Montgomery County Sheriff's office also has a policy requiring that a Use of Force Report be filled out anytime OC spray is used against an inmate or suspect.

62. When a Use of Force report is properly filled out at the Montgomery County Sheriff's office three (3) copies are generated of which one is supposed to be sent to the Training Center for review, one is sent to records to be kept for seven (7) years pursuant to the records retention policy and the last copy should be kept with the report on-site in the basement of the Montgomery County Jail.

63. Defendant Sealey never filled out a Use of Force report concerning her use of OC spray against Plaintiff Amber Swink.

64. Even after learning that no Use of Force Report had been filled out by Defendant Sealey, Defendant Crosby and Defendant Plummer never required Defendant Sealey to fill out a Use of Force report to document the OC spraying and assault(s) of Plaintiff Amber Swink.

65. It was an intentional act of Defendants not to complete a Use of Force report so that there would be lack of evidence of the excessive use of force (OC spray assault) and less likelihood that the matter would be made public and/or result in litigation against the Defendants since no evidence would exist to document the wrongful conduct.

66. After viewing the video and discovering that no Use of Force Report had been completed, Defendant Crosby conveyed the aforementioned information to Defendant Phil Plummer.

67. Upon information and belief, Defendant Phil Plummer viewed the videotape or should have viewed the videotape of Defendant Sealey assaulting Plaintiff Amber Swink with OC spray while she was restrained in the restraint chair.

68. Upon information and belief, several private meetings were held between the Defendants to determine how best to conceal the wrongful conduct of Defendant Sealey, prevent any possible criminal or civil litigation and continue with Defendant Sealey's promotion given the political pressures from Mr. Derrick Forward and the NAACP.

69. It was ultimately determined by the Defendants that the videotape of Defendant Sealey spraying Plaintiff Amber Swink with OC spray while she was restrained in the restraint chair should be intentionally destroyed, along with other electronic data and reports to prevent probable civil litigation, criminal investigation and protect a black female being promoted to the command staff from discipline and/or termination.

70. Under orders and/or with the consent of Defendant Plummer, Defendant Crosby, Defendant Sealey and/or another member of the Montgomery County Sheriff's office all videotape, electronic and other evidence of Defendant Sealey spraying Plaintiff Amber Swink with OC spray while in the restraint chair was destroyed.

71. As part of the cover up and concealment, Major Scott Landis, who was also involved in the investigation of the incident was ordered to issue a "Letter of Caution" to Defendant Sealey, not for her assault and excessive use of force against an inmate, but for not filling out a Use of Force report, so as not to document the actual wrongful conduct or facts of the incident, but to make it look like the incident was actually investigated and that all that occurred was an oversight in filling out a Use of Force report.

72. Consistent with the plan derived by the Defendants, Defendant Sealey was promoted to the rank of Captain.

73. Instead of being promoted, Defendant Sealy should have been charged with the crime of assaulting an inmate and terminated from the Montgomery County Sheriff's Department.

74. Undersigned counsel for Plaintiff Amber Swink made a public records request to the Montgomery County Sheriff's Office on June 20, 2016 in which the videotape and Use of Force report from the aforementioned incident were requested along with other materials.

75. In response to the public records request the Montgomery County Sheriff's office failed to produce the any videotape and Use of Force report for the aforementioned incident(s) involving Plaintiff Amber Swink.

76. Contained within the public records response were two memorandums from Defendant Crosby related to the public records request which are dated July 1, 2016 and July 5, 2016 respectfully.

77. Within the memorandum Defendant Crosby states that: "Pursuant to Montgomery County Record Retention Schedule, Schedule Number 14-36, Security Video Recordings, the Retention Period is listed as "7 days, automatic data overwrite. No RC-3 required."

78. This records retention policy is in violation with that set forth by the United States Court of Appeals for the Sixth Circuit in the case of *Burgess v. Fisher*, 735 F.3d 462 (2013) and is patently unreasonable since this policy bars the review of the evidence by anyone outside of the Montgomery County Sheriff's Office from a practical standpoint and even limits review within the Montgomery County Sheriff's Office.

79. Within the memorandum Defendant Crosby states: "I reviewed the original report when it was completed and it had the required use of force report, video and restraint (chair) log attached. Since the original packet cannot now be located, the incident report was printed from the Tiburon jail management system to be forwarded with the material requested through this public records request. The use of force report cannot be located and as it is a paper document, cannot be reproduced, the video that was attached to the original cannot be located and cannot be found where it is normally saved for future use pursuant to the records retention schedule. The video was not located and cannot be reproduced."

80. In light of the multiple discrepancies in the information produced and fact that the video (which was subject to a seven year retention policy) and "Use of Force" report (of which there were three separate copies kept in three separate locations) were not produced, undersigned counsel for Plaintiff Amber Swink made a second and final public records request directly to Defendant Sheriff Phil Plummer on August 9, 2016 in which the videotape and Use of Force report from the aforementioned incident was requested.

81. In response to the second public records request Defendant Sheriff Phil Plummer and the Montgomery County Sheriff's office failed to produce the videotape and Use of Force report for the aforementioned incident.

# COUNT ONE: DEPRIVATION OF CIVIL RIGHTS
# 42 U.S.C. 1983
*All Defendants individually and officially except Board of County Commissioners in their official capacities*

82. Plaintiffs reincorporate by reference all preceding paragraphs.

83. Defendants, acting under color of state law and in the course of employment, deprived and/or denied Plaintiff Amber Swinks' federal constitutionally and statutorily protected rights.

84. Defendants violated Plaintiffs' rights to: (1) protection against unreasonable search and seizure; (2) due process of the law; (3) security in her person, papers and possessions, and (4) protection from cruel and unusual punishment.

85. As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic and non-economic damages and Defendants are liable to Plaintiff for same.

## *BRANCH ONE*: EXCESSIVE USE OF FORCE
## 42 U.S.C. 1983; AMENDMENTS 4, 8, & 14, U.S. CONSTITUTION

86. Plaintiffs reincorporate by reference all preceding paragraphs.

87. As alleged in previous paragraphs, Defendant Sealey applied an objectively unreasonable amount of force on Plaintiff while in Defendants custody.

88. Defendants Sealey, Plummer and Board of County Commissioners are liable for the excessive use of force applied by Defendant Sealey under the doctrines of respondeat superior, ratification, estoppel, and/or agent/principal.

89. Plaintiffs' injuries resulted directly and only from the use of force that was excessive to the need or lack thereof.

90. The activities of the Defendants, as alleged above, were carried out deliberately, indifferently, grossly, negligently, and willfully and under the alleged authority and color of the laws of the State and County which Defendants represented.

91. Plaintiff was subjected to, or was caused to be subjected to, use of force that was objectively unreasonable in light of the facts and circumstances presenting Defendants.

92. Plaintiff was subjected to, or was caused to be subjected to, use of force far in excess of what an ordinary, prudent police/corrections officer would have done under those circumstances. The amount of force used violated Plaintiffs' rights secured by the 4th Amendment to the United States Constitution.

93. Plaintiff was subjected to, or was caused to be subjected to, use of force by Defendants that shocked the conscience and in fact amounted to torture.

94. Under the circumstances, the use of OC spray on a person who was already fully restrained in a restraint chair, completely deprived of the ability to move or protect themselves, was certain or reasonably foreseeable that it would cause pain, injury and possible death, constituting reckless and deadly force.

95. Defendants lacked any cause whatsoever to believe that Plaintiff posed a significant threat of death or serious physical injury to the officer, others, or herself.

96. Defendants' use of force constituted a denial of Plaintiffs' rights to be secure from cruel and unusual punishment as secured and guaranteed to her under the 8th and 14th Amendments to the United States Constitution.

97. Plaintiff further alleges that the use of force to which she was subjected was grossly negligent, reckless, malicious, sadistic, tortious and was carried out with abandoned and depraved hearts.

98. Defendants' use of force constituted a denial of Plaintiffs' rights to Due Process of the Law as secured and guaranteed to her under the 14th Amendment to the United States Constitution. There was no need for this particular application of force, there was no relationship between the amount of force inflicted, the extent of the injuries inflicted was severe, permanent, and debilitating, and the amount of force applied was applied maliciously and sadistically for the purpose of doing harm.

99. As a direct and proximate result of the activities alleged above, the Plaintiff suffered injuries and damages, including pain and suffering, for which the Defendants named are jointly and severally liable.

## *BRANCH TWO*: **POLICIES AND PROCEDURES**
## **42 U.S.C. 1983**

100. Plaintiffs reincorporate by reference all preceding paragraphs.

101. Defendants Sealey, Crosby and Plummer, as Sheriff of Montgomery County and jail administrator / supervisor, respectively, were and are responsible for establishing and implementing policies, practices and procedures designed to assure that the document and videotape retention policy is secure, long enough to be useful to litigant's in Plaintiff's position and is duplicative in such a way that if it is erased off of one system that a copy is still available elsewhere.

102. Defendants Sealey, Crosby and Plummer, as Sheriff of Montgomery County and jail administrator, respectively, were and are responsible for establishing and implementing policies, practices and procedures designed to assure that plaintiff, a detainee at the Montgomery County Jail, would not be subjected to egregious and unwarranted acts of

violence as alleged hereinabove and that if said wrongful conduct or use of force was utilized that at a minimum a Use of Force report should be filled out documenting the wrongful conduct.

103. Defendant Board of County Commissioners, as the duly elected body which sets policies and procedures for Montgomery County, Ohio, is and was responsible for establishing and implementing policies and procedures designed to assure the Constitutionally-proper operation of the Montgomery County Jail and Montgomery County Sheriff's Office and exercising proper oversight over these same entities. Proper operation of these entities includes prevention of violent and savage conduct as alleged in this complaint, proper documentation of any use of force and/or wrongful conduct by any law enforcement officer, and a document/videotape retention policy that provides for sufficient review of events that is long enough to be useful to supervisors, investigators, inmates and litigants.

104. Defendants policies, practices and procedures were not designed to assure that Plaintiff, a detainee at the Montgomery County Jail, would be protected from violent and savage conduct as alleged in this complaint.

105. Defendants policies, practices and procedures were not designed to assure that Plaintiff, a detainee at the Montgomery County Jail, would have proper documentation and access to evidence of any use of force utilized by a law enforcement officer(s) against her.

106. Defendants policies, practices and procedures were not designed to assure that Plaintiff, a detainee at the Montgomery County Jail, would have proper access to videotape evidence long enough to be useful to litigants in Plaintiff's position.

107. On information and belief, Defendants application of unconstitutionally excessive force and destruction of evidence was pursuant to policy, procedure, past practice, habit, custom, and/or directives of the Defendant's employers and supervisors. Moreover, upon information, Defendants Sealey, Crosby, Plummer and other employees of the Montgomery County Sheriff's Office have engaged in a pattern in the past of the use of violent, excessive force in violation of established policies and procedures of which the Defendants' respective employers and have likewise destroyed evidence of same. The employers, including the Board of County Commissioners, had notice but negligently, wantonly, recklessly, and willfully failed to correct. The Board of County Commissioners tolerated a custom of wrongful conduct within the Montgomery County Sheriff's Office that leads to, causes, or results in the deprivation of constitutionally protected rights.

108. Defendants adopted policies, practice, and procedures that they knew or should have known would be inadequate to prevent Plaintiff's injuries or to retain documentation of the videotapes and/or use of force reports long enough to be of use to litigants in Plaintiff's position.

109. Defendants, by and through the position of knowledge, activities and ratification of the person or persons having supervisory responsibility over said case implemented,

12

promulgated, adopted, ratified and acquiesced in the deliberate indifference to the serious needs of the Plaintiff, and those similarly in her position, and willfully, wantonly, recklessly or negligently creating an unlawful and unreasonable risk of injury, use of excessive force and deprivation of her right to documentary and videotape evidence of the wrongful conduct.

110. On information and belief, Defendant Sealey has not been the subject of any disciplinary review for the wrongful treatment, assault and excusive use of force used on the Plaintiff, except for a letter of caution for failing to fill out Use of Force report, which had nothing to do with the excessive force that was used on the Plaintiff showing that the wrongful conduct has been adopted and ratified by Defendants.

111. On information and belief, Defendants have not been the subject of any disciplinary review for their wrongful conduct, for their failure to retain and/or destruction of the videotape evidence of the wrongful treatment of Plaintiff. Their conduct has been adopted and ratified by Defendants.

112. Defendants were acting under color of state law in implementing the described practice, custom, policies, and procedures for the Montgomery County Sheriff's Office and Montgomery County Jail.

113. As a direct and proximate result of the consequence of the activities of Defendants and their respective agencies and employers, Plaintiff was deprived of her rights as secured and guaranteed by the 4th, 8th and 14th Amendment of the Constitution of the United States.

114. As a direct and proximate result of the activities alleged above, Plaintiffs were caused to suffer damages, including pain and suffering, for which said Defendants are liable.

### *BRANCH THREE*: **FAILURE TO SUPERVISE & DISCIPLINE 42 U.S.C. 1983**

115. Plaintiffs reincorporate by reference all preceding paragraphs.

116. Defendants, negligently, deliberately, recklessly, failed to properly train, supervise and/or discipline the officer(s) involved in the unlawful and unconstitutional application of force on the Plaintiff and the subsequent denial of documentation and videotape evidence of the wrongful conduct.

117. The failure to train, supervise and/or discipline was the result of the Defendants' deliberate indifference to the constitutional rights of Plaintiff and the public at large.

118. As a direct and proximate result of Defendants' failure to properly train, supervise or discipline the officers involved in the attack on Plaintiff, Plaintiff suffered severe physical and emotional injuries.

13

119. As a direct and proximate result of Defendants' failure to properly train, supervise or discipline the officers involved in the destruction of the videotape evidence of the attack on Plaintiff, Plaintiff suffered a disruption of her case and damages.

120. Specifically, but without limitation, the fact that an OC spray attack on a completely restrained 130 lb woman, by a supervising officer in charge of the jail, is even allowed to happen evinces the fact that the Defendants, Montgomery County Sheriff, the administrator of the Montgomery County Jail, and the Board of County Commissioners is deliberately indifferent to the safety and constitutional rights of detainees.

121. On information and belief, the Board of County Commissioners, as the body politic responsible for the Sheriff's Office, has failed to conduct or cause to be conducted remedial training, additional supervision and/or discipline to prevent and ameliorate injuries similar to those that were inflicted on Plaintiff.

122. On information and belief, the Board of County Commissioners, has knowledge of past instances of detainee abuse and has failed to train, supervise, discipline or otherwise respond so as to prevent injuries to members of the public.

123. The fact that Defendant Sealey was actually promoted to the command staff of the Montgomery County Sheriff's office and given the rank of Captain after brutally assaulting a completely restrained inmate with OC spray is not only ludicrous, but encourages other law enforcement and corrections officers to violate the Constitutional Rights of the Plaintiff and the public at large.

## **COUNT TWO: MALICE & GROSS, WANTON, WILLFUL AND RECKLESS WRONGFUL CONDUCT**
*All Defendants in their individual capacities, except the Board of County Commissioners*

124. Plaintiffs reincorporate by reference all preceding paragraphs.

125. Defendants owed a duty of reasonable care under the circumstances.

126. The acts and omissions of Defendants, as alleged herein, constitute gross, wanton, willful, and reckless wrongful conduct and actual malice in light of Defendants' actual conscious indifference to the health, safety, legal rights and welfare of Plaintiff.

127. Defendants Sheriff Plummer, Sealey, Crosby and Board of County Commissioners owed Plaintiff a duty to exercise that level of care in the training, supervision, document/video management, and regulation of their personnel that would have prevented Plaintiffs' injuries and damages as pled herein.

128. Defendants Sheriff Plummer, Sealey, Crosby and Board of County Commissioners negligently, maliciously, recklessly, and willfully breached that duty and as a direct and proximate result, Plaintiff suffered injuries and damages.

129. Defendant Sealey owed Plaintiff a duty of reasonable care under the circumstances and not to act recklessly, intentionally or negligently.

130. Defendant Sealey negligently, intentionally, maliciously, recklessly, and willfully breached that duty through her wrongful conduct and as a direct and proximate result, Plaintiff suffered injuries and damages.

131. Through the conduct alleged above, Defendants negligently, intentionally, maliciously, recklessly, and willfully breached this duty by attacking Plaintiff with OC spray and/or destroying the videotape and other documentary evidence so as to inhibit probable litigation and as a direct and proximate result, Plaintiff suffered injuries and damages.

132. As a result of the actual malice and conscious indifference of Defendants, Plaintiffs are entitled to recover, and hereby request, punitive damages in an amount appropriate to punish and deter Defendants from similar acts of misconduct in the future.

### COUNT THREE: ASSAULT
*Defendant Sealey in her individual capacity*

133. Plaintiffs reincorporate by reference all preceding paragraphs.

134. Defendant Sealey acted with intent to create an imminent apprehension of a harmful or offensive contact with the Plaintiff's person.

135. Defendant Sealey actually threatened and administered imminent physical violence and Plaintiff was placed into apprehension of imminent harmful or offensive contact.

136. Immediately preceding intentional physical contact, Plaintiff was placed into apprehension of imminent harmful or offensive contact.

137. As a direct and proximate result of Defendants' actions and inactions, Defendant has suffered and will continue to suffer disabling psychological trauma, loss of enjoyment of life, pecuniary injury, and will continue to suffer same into the future.

### COUNT FOUR: BATTERY
*Defendant Sealey in her individual capacity*

138. Plaintiffs reincorporate by reference all preceding paragraphs.

139. Defendants acted with intent to cause Plaintiff serious bodily harm.

140. As alleged above, while in their custody, Defendants Sealey inflicted a harmful or offensive contact onto the Plaintiff's person. Specifically, Defendant Sealey had Plainitff placed into a restraint chair, which prevented her from moving any part of her body, and then subsequently blasted her in her face with OC spray until she was rendered unconscious.

141. Defendants force was excessive by any measure and was without authorization, express or implied.

142. The amount of force used during the OC spraying and restraint chair usage of the otherwise submissive, restrained and unthreatening Plaintiff was harmful and offensive and outside the scope of any privilege or consent.

143. As a direct and proximate result of the actions and inactions of Defendants, Plaintiff has suffered bodily injury, pain and suffering, permanent, disfiguring and disabling injury, loss of enjoyment of life, and will continue to suffer same into the future.

144. As a direct and proximate result of the actions and inactions of Defendants, Plaintiff has suffered pecuniary damages, including, but not limited to, loss of wages, medically-related expenses, and the cost of replacement services and is entitled to those damages which shall punish and deter Defendants from future conduct in conformity with the allegations above.

## **COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*All Defendants in their individual capacities, except the
Board of County Commissioners*

145. Plaintiffs reincorporate by reference all preceding paragraphs.

146. Defendants, jointly and severally, acted in an extreme and outrageous manner passing all reasonable bounds of decency and were excessive, wanton, or gross. Defendants' conduct went beyond all possible bounds of decency and may be regarded as atrocious and utterly intolerable in a civilized community.

147. The Defendants' actions were the proximate cause of Plaintiffs' severe psychological and physical injuries.

148. The Plaintiff's mental anguish was serious and of a nature that no reasonable person could be expected to endure.

## **COUNT SIX: CONSPIRACY TO FALSIFY AND/OR OMIT REQUIRED REPORTS AND CONSPIRACY TO DESTROY VIDEOTAPE EVIDENCE**
*All Defendants in their individual capacities, except the
Board of County Commissioners*

149. Plaintiffs reincorporate by reference all preceding paragraphs.

150. At some point after Defendants severely injured the Plaintiff, Defendants, allied as an association that numbered more than two (2).

151. On or after November 15, 2015, Defendants associated with one another with an unlawful objective, namely, the falsification, omission and destruction of official reports and videotape evidence chronicling the assault, battery and detention of Plaintiff in the Montgomery County Jail.

152. As part of that unlawful association, Defendants formed an agreement, understanding, or "meeting of the minds" regarding the objective and the means of pursuing it.

153. As a direct and proximate result of Defendants' association and the carrying out of their unlawful objective, Plaintiffs have suffered physical and other damages and their recovery for same remains frustrated.

### COUNT SEVEN: SPOLIATION OF EVIDENCE / INTERFERENCE WITH RIGHT TO REMEDY
*All Defendants in their individual capacities, except the Board of County Commissioners*

154. Plaintiffs reincorporate by reference all preceding paragraphs.

155. Defendants intended through their conduct as pleaded herein, or knew or should have known that their conduct as pleaded herein, would result in the destruction, concealment or spoliation of evidence favorable to Plaintiff. Specifically, Defendants Sealey, Crosby and Plummer.

156. Defendants were aware, at the time of the conduct pleaded herein, or should have been aware, of the likelihood of litigation between Plaintiff and Defendants.

157. Defendants' willful conduct, as pleaded herein, resulted in the destruction, concealment or spoliation of evidence favorable to the Plaintiff, in the form of documents, videos, recordings, testimony, and other evidence.

158. Defendants' conduct, as pleaded herein, was designed to disrupt or destroy Plaintiff's future civil action for damages, forcing Plaintiffs to expend and incur further fees, costs, and other damages for recovery of damages stemming from the brutal attack of the Plaintiff.

159. Defendants' conduct which resulted in the destruction or spoliation of evidence favorable to Plaintiff was undertaken willfully, wantonly, recklessly, and or with a substantial disregard for the rights of Plaintiff and the general public and was substantially certain to result in harm to Plaintiff and others seeking remedy against the Defendants for their wrongful conduct.

160. Plaintiffs are entitled to recover compensatory and punitive damages as a result of Defendants actions and omissions.

**WHEREFORE,** Plaintiffs respectfully demands judgment against the Defendants, jointly and severally, for compensatory and other damages in amounts to be determined at trial, as well as the costs of this action to include reasonable attorney fees, prejudgment interest, post-judgment interest and to such other and further relief to which Plaintiffs may be deemed entitled.

Respectfully submitted,

/s/ Douglas D. Brannon
Douglas D. Brannon (0076603)
Attorney for Plaintiff
BRANNON & ASSOCIATES
130 W. Second St.    Suite 900
Dayton, OH   45402
Telephone:    (937) 228-2306
Facsimile:    (937) 228-8475
E-Mail:    dbrannon@branlaw.com

## JURY DEMAND

Plaintiff Amber Swink, by and through their attorneys, hereby respectfully demand trial by jury as to their claims pursuant to Federal Rule of Civil Procedure 38, et seq., and Southern District Local Rule 38.1.

/s/ Douglas D. Brannon
Douglas D. Brannon