IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMBER SWINK,

    Plaintiff,

v.

MONTGOMERY COUNTY
BOARD OF COMMISSIONERS,
et al.,

    Defendant.

:
:
:
:
:
:

Case No. 3:16-cv-392

JUDGE WALTER H. RICE

MAGISTRATE JUDGE
SHARON L. OVINGTON

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OF DEFENDANTS MONTGOMERY COUNTY BOARD OF COMMISSIONERS, SHERIFF PHIL PLUMMER, CAPTAIN JUDITH L. SEALEY, CAPTAIN CHUCK CROSBY AND MAJOR SCOTT LANDIS (DOC. #15); PLAINTIFF AMBER SWINK'S CLAIM OF DEPRIVATION OF CIVIL RIGHTS (COUNT I) AGAINST PLUMMER, SEALEY, CROSBY AND LANDIS, AS TO THEIR OFFICIAL CAPACITIES ONLY, IS DISMISSED WITH PREJUDICE; ALL OTHER CLAIMS AGAINST THE BOARD, PLUMMER, SEALEY, CROSBY AND LANDIS SHALL PROCEED TO DISCOVERY

---

Plaintiff Amber Swink ("Plaintiff") alleges that, after being arrested and transported to the Montgomery County, Ohio, Jail ("Jail"), she was forcibly placed into a restraint chair and was twice sprayed with oleoresin capsicum ("OC spray" or "pepper spray"), at the direction of Defendant Judith Sealey ("Sealey"), at the time a sergeant (now captain) within the Office of the Montgomery County, Ohio, Sheriff ("Sheriff"). Doc. #3. Further, Plaintiff claims that, in violation of Sheriff's Office policy, Sealey did not allow her use of force against Plaintiff to be videotaped, and she did not complete a Use of Force Report regarding the pepper spraying of Plaintiff. *Id.* Nor was she ordered to

do so by any of the following: Defendants Phil Plummer ("Plummer"), Montgomery County, Ohio, Sheriff; Chuck Crosby ("Crosby"), a captain within the Sheriff's Office who was responsible for overseeing the Jail's day-to-day operations; or Scott Landis ("Landis"), a major within the Sheriff's Office. *Id.* Plaintiff filed suit against Plummer, Crosby, Landis and Sealey (collectively "Individual Defendants"), in their individual and official capacities, and the Montgomery County, Ohio, Board of Commissioners ("BCC" or "the Board"), alleging violations of her rights under the United States Constitution (claims under 42 U.S.C. § 1983) and raising several claims arising under Ohio state law. *Id.* The Board and the Individual Defendants (collectively "Defendants") have filed a Motion for Partial Judgment on the Pleadings ("Motion"). Doc. #15. For the reasons set forth below, the Motion is SUSTAINED IN PART AND OVERRULED IN PART.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On or about November 15, 2015, Plaintiff was arrested at her home while in an intoxicated state. Doc. #3, ¶ 14, PAGEID #29. During her arrest and while she was being transported to the Jail, Plaintiff, while "manhandled" by the arresting officers, "was unharmed prior to arriving at the Montgomery County Jail[.]" *Id.*, ¶ 21, PAGEID #30. Plaintiff was placed in a holding cell, "where it was reported that she was continuing to act belligerent[ly], continued screaming and banging on the glass." *Id.*, ¶ 27. Sealey, after warning Plaintiff to stop her behavior, *id.*, ¶ 28, "ordered Plaintiff Amber Swink's cell door open[ed] and delivered a significant amount of OC spray into her cell, on her

---

[1] As Defendants' Motion is brought under Rule 12(c), the Court, for the purposes of the Motion, must treat Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

person and in her face which debilitated the Plaintiff and caused her to stop any belligerent conduct upon which the cell door was closed." *Id.*, ¶ 29, PAGEID #31. Sealey's use of pepper spray was not recorded on video, in violation of a Jail policy requiring that every use of force to be videotaped. *Id.*, ¶¶ 31-32.

Sealey ordered Corrections Officers M.K. Plumb and L.J. Jenkins to place Plaintiff into a seven-point restraint chair, "where she was then strapped into the chair[,] [preventing] her from moving." Doc. #3, ¶ 36, PAGEID #31. "[S]he was left fully restrained, handcuffed and isolated in the chair for over an hour and a half." *Id.*, ¶ 37. "After an hour and a half of being left in the restraint chair and unable to move, Plaintiff Amber Swink started yelling," *id.*, ¶ 38, at which point Sealey again used pepper spray on Plaintiff "until she became unconscious and suffer[ed] permanent, serious, and debilitating injuries." *Id.*, ¶ 39. This second incident was videotaped.

After the night in question, several sergeants working in the Jail reported the above incidents to Crosby. Doc. #3, ¶ 53, PAGEID #33. Crosby began an investigation of the conduct of Sealey and the other Corrections Officers, and reviewed the videotape of Sealey's second use of pepper spray. *Id.*, ¶¶ 54, 56. "Crosby shared the information and videotape with Defendant [Major] Landis, who was his direct supervisor." *Id.*, ¶ 58. The videotape was subsequently viewed by Sheriff Plummer, who, in association with Landis, Crosby and Sealey, allegedly ordered that "all videotape, electronic and other evidence of Defendant Sealey spraying Plaintiff Amber Swink with OC spray while in the restraint chair [be] destroyed." *Id.*, ¶ 73, PAGEID #35. Further, and in contravention of Sheriff's Office policy, *id.*, ¶ 64, PAGEID #34, "Sealey never filled out a Use of Force report concerning her use of OC spray against Plaintiff[,]" *id.*, ¶ 66, nor was she ever

3

instructed to do so by Crosby, Landis or Plummer. *Id.*, ¶ 67. Rather, Landis "took it upon himself to issue a 'Letter of Caution' to Defendant Sealey, not for her assault and excessive use of force against an inmate, but for not filling out a Use of Force report[.]" *Id.*, ¶ 74, PAGEID #35.

On June 20, 2016, Plaintiff's counsel made a public records request to the Sheriff's Office for any videotape and Use of Force Report connected with Plaintiff's detention at the Jail. Doc. #3, ¶ 77, PAGEID #35. The Sheriff's Office failed to produce any tape, but did produce two memoranda "from Defendant Crosby related to the public records requested . . . dated July 1, 2016[,] and July 5, 2016[.]" *Id.*, ¶ 79. The memoranda stated, in relevant part, that: "Pursuant to Montgomery County Record Retention Schedule . . . [for] Security Video Recordings, the Retention Period is listed as '7 days, automatic data overwrite.'" *Id.*, ¶ 80, PAGEID #36. Plaintiff's counsel "made a second and final public records request directly to Defendant Sheriff Phil Plummer on August 9, 2016[,] in which the videotape and Use of Force report from the aforementioned incident [were] requested." *Id.*, ¶ 83. Plummer did not produce any videotape or Use of Force Report in response to that second request. *Id.*, ¶ 84.

On November 3, 2016, Plaintiff filed the instant lawsuit. In relevant part for the current Motion, Plaintiff alleges that the Board "is and was responsible for establishing and implementing policies and procedures designed to assure the constitutionally-proper operation of the Montgomery County Jail and Montgomery County Sheriff's Office and exercising proper oversight over these same entities." Doc. #3, ¶ 106, PAGEID #38. Plaintiff claims that, in furtherance of such oversight, the Board was required to implement policies to protect Jail inmates from excessive force, and policies

4

regarding "documentation of any use of force and/or wrongful conduct by any law enforcement officer, and a document/videotape retention policy that provides for sufficient review of events that is long enough to be useful to supervisors, investigators, inmates and litigants." *Id.* Plaintiff alleges that the Board, in dereliction of those responsibilities, "tolerated a custom of wrongful conduct within the Montgomery County Sheriff's Office that leads to, causes, or results in the deprivation of constitutionally protected rights." *Id.*, ¶ 110, PAGEID #39. Plaintiff claims that the Board "adopted policies, practice, and procedures that they knew or should have known would be inadequate to prevent Plaintiff's injuries or to retain documentation of the videotapes and/or use of force reports long enough to be of use to litigants in Plaintiff's position." *Id.*, ¶ 111.

Further, Plaintiff alleges that the Board "implemented, promulgated, adopted, ratified and acquiesced in the deliberate indifference to the serious needs of the Plaintiff, and . . . creat[ed] an unlawful and unreasonable risk of injury, use of excessive force and deprivation of her right to documentary and videotape evidence of the wrongful conduct." Doc. #3, ¶ 112, PAGEID #39. Plaintiff claims that her injuries demonstrate that the Board was "deliberately indifferent to the safety and constitutional rights of detainees[,]" *id.*, ¶ 123, PAGEID #40, and that the Board, despite knowing that Plaintiff's constitutional rights had been violated, failed to implement or order additional training, supervision, or discipline so as to prevent future detainees from suffering similar injuries and deprivations of rights. *Id.*, ¶¶ 124-25, PAGEID #40-41.

Plaintiff's Claims Six and Seven, Conspiracy to Falsify and/or Omit Required Reports and Conspiracy to Destroy Videotape Evidence ("Civil Conspiracy"), and

5

Spoliation of Evidence/Interference with Right to Remedy ("Spoliation"), respectively, are raised only against the Individual Defendants in their respective individual capacities. Doc. #3, PAGEID #43-44. In Claim Seven, Plaintiff alleges that the Individual Defendants were reasonably on notice that litigation was likely to ensue with respect to Plaintiff's detention. Yet, they destroyed any videotapes or Use of Force Report that pertained to Sealey's pepper-spraying of Plaintiff, in contravention of Jail policies. *Id.*, ¶¶ 158-60, PAGEID #44. Plaintiff claims that the Individual Defendants' conduct "was designed to disrupt or destroy Plaintiff's future civil action for damages, forcing Plaintiffs to expend and incur further fees, costs, and other damages for recovery of damages[.]" *Id.*, ¶ 161. In Claim Six, Plaintiff claims that the Individual Defendants associated with one another and formed an agreement regarding "an unlawful objective, namely, the falsification, omission and destruction of official reports and videotape evidence chronicling the assault, battery and detention of Plaintiff in the Montgomery County Jail." *Id.*, ¶ 153, PAGEID #43.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6)." *Wurzelbacher v. Jones-Kelly*, 728 F. Supp. 2d 928, 931 (S.D. Ohio 2010) (Marbley, J.) (citing *Ziegler v. IBP Hog Mkt.. Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2011)).

6

Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the plaintiff has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) or for judgment on the pleadings under Rule 12(c) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule12(b)(6) or 12(c) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) or 12(c) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

7

*Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Rather, those conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id.* at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### III. THE BOARD IS A PROPER PARTY TO THE LAWSUIT

As discussed above, Plaintiff alleges that the Board was responsible for establishing and implementing constitutionally-appropriate policies and procedures for the Jail, and exercising oversight of the Sheriff's Office in its operation of the Jail. Doc. #3, ¶ 106, PAGEID #38. The Board argues that it "has been delegated no statutory authority pursuant to Ohio law to control the [Montgomery] County [J]ail." Doc. #15, PAGEID #115 (citing *Brown v. Voorhies*, No. 2:07-cv-13, 2008 WL 2397692, at *2 (S.D. Ohio Jun. 10, 2008) (Kemp, Mag. J.), *Report and Recommendations adopted at* 2008 WL 3993893 (S.D. Ohio Aug. 21, 2008) (Frost, J.)). Rather, it argues, the Sheriff's Office has sole authority over implementation of policies and procedures, and ensuring that inmates' constitutional rights are safeguarded. *Id.*, PAGEID #116 (citing Ohio Rev. Code § 341.01). The Board does fund the Sheriff's Office and, consequently, the Jail. Nonetheless, the Sheriff is an independently-elected public official, and consequently, courts "have routinely held that county commissioners cannot be held liable on the basis

of their mere funding of the sheriff's office." *Id*. (citing *Ridgeway v. Union Cnty. Comm'rs*, 775 F. Supp. 1105, 1109-10 (S.D. Ohio 1991) (Smith, J.); *Coffey v. Miami Cnty. Jail*, No. 3:05-cv-383, Doc. #28 (S.D. Ohio Jan. 4, 2007) (Ovington, Mag. J.), *Supp. Report and Recommendations adopted at* 2007 WL 316262 (S.D. Ohio Jan. 29, 2007) (Rose, J.)); *accord: Stack v. Karnes*, 750 F. Supp. 2d 892, 900 (S.D. Ohio 2010) (Frost, J.); *Brown*, 2008 WL 3993893 (dismissing Boards of County Commissioners, from section 1983 lawsuits because the Boards had no authority over their county jails). In light of the above, the Board claims, any action undertaken by the Individual Defendants or other Jail employee may not be imputed to the Board. *Id*., PAGEID #116-17. Accordingly, the Board argues, Plaintiff's 42 U.S.C. § 1983 claim against it must be dismissed. *Id*., PAGEID #117.

Plaintiff argues that the Board "made precisely the same motion, based on the same argument and the same Ohio statutes," in a previous case. "The motion was denied in that case, and it should be denied here." Doc. #17, PAGEID #148 (citing *Replogle v. Montgomery Cnty., Ohio*, No. 3:09-cv-102 (S.D. Ohio 2009)). In overruling the Board's motion to dismiss, the Court in *Replogle* noted that the U.S. Court of Appeals for the Sixth Circuit has allowed section 1983 claims against county commissioners arising out of alleged constitutional violations at a county jail to proceed. No. 3:09-cv-102, Doc. #19, PAGEID #144-46 (S.D. Ohio May 20, 2009) (Merz, Mag. J.), *Supp. Report and Recommendations adopted at* 2009 WL 1636506 (S.D. Ohio Jun. 10, 2009) (Rice, J.) (citing *Petty v. Cnty. of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007), *abrogated on other grounds as recognized in Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017); *Alkaire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Leach v. Shelby*

9

Cnty. Sheriff, 891 F.2d 1241 (6th Cir. 1989); Marchese v. Lucas, 758 F.2d 181, 188-89 (6th Cir. 1985)). In light of this jurisprudence, Plaintiff argues, the Board is a proper Defendant. Doc. #17, PAGEID #149.

In Marchese, the Sixth Circuit upheld a verdict against the Wayne County, Michigan, Board of Supervisors in a 42 U.S.C. § 1983 claim arising out of alleged mistreatment of the plaintiff while in the custody of the Wayne County Sheriff. The Court did so despite the Michigan Constitution stating that "[t]he county shall never be responsible for [a county sheriff's] acts, except that the board of supervisors may protect him against claims by prisoners for unintentional injuries received while in his custody." MI. CONST. art. 7, § 6. The Marchese Court concluded that, while the Board of Supervisors did not make policy for the jail, "[t]he Sheriff is, however, the law enforcement arm of the County and makes policy in police matters for the County." 758 F.3d at 189. As Wayne County, "through its Board of Supervisors, appropriates funds and establishes the budget for the Sheriff's department[,]" the Court concluded "that the relationship between the County and the Sheriff's Department is so close as to make the County liable for the Sheriff's failure to train and discipline his officers and his ratification of the wanton brutality by members of his force[.]" Id. The Court held that "[t]he County's reliance on Michigan law to exempt it from liability is clearly inappropriate" under the United States Constitution and Supreme Court precedent, id. (citing U.S. CONST. art. VI cl. 2; Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)), and thus the Board of Supervisors was a proper defendant.

The Sixth Circuit has repeatedly applied Marchese reasoning with respect to the inclusion of county boards of commissioners as parties in a section 1983 lawsuit arising

out of alleged mistreatment at a county jail. In *Petty*, the Sixth Circuit stated in *dicta* that Plaintiff's allegations against the County—that the County's failures to: (a) adequately train and supervise corrections officers; (b) promulgate and implement policies to protect inmates' constitutional rights "had the effect of permitting, encouraging, approving and ratifying violations of the constitutional rights of citizens," 478 F.3d 341, 347-48 (6th Cir. 2007)—were sufficient to state a claim for municipal liability against the County. *Id.* at 347-48 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *accord*: *Alkire*, 330 F.3d at 810; *Leach*, 891 F.2d at 1245 (finding that the County was the proper defendant in a section 1983 claim regarding the alleged misconduct by a sheriff's officers).

As discussed below, the Sheriff's Department and Montgomery County, Ohio, are not *sui juris*; rather, they must be sued through the Board of County Commissioners. *See Replogle*, No. 3:09-cv-102, Doc. #19, PAGEID #144 (citing *McGuire v. Ameritech Servs.*, 253 F. Supp. 2d 988, 992 n.2 (S.D. Ohio 2003) (Rice, C.J.)) (concluding that the proper defendant in case alleging misconduct by Montgomery County Sheriff's Office is the Board). Thus, to hold that the Board could not be liable for any unconstitutional policies implemented at the Jail would have the practical effect of eliminating Montgomery County's potential liability under *Monell*. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (suits against persons in their official capacities are "in all respects other than name, to be treated as a suit against the entity."). *Marchese* and its progeny, recognizing this danger, correctly allowed *Monell* liability claims under similar circumstances to proceed. Moreover, the allegations detailed above more than adequately state a *Monell* liability claim against Montgomery

County for tolerating a custom of wrongful conduct, failing to adopt policies to protect inmates' constitutional rights, and being deliberately indifferent to Plaintiff's needs. Accordingly, Defendants' Motion is overruled to the extent that it seeks dismissal of the Board of County Commissioners.

### IV. OFFICIAL CAPACITY CLAIMS AGAINST INDIVIDUAL DEFENDANTS ARE DISMISSED AS REDUNDANT

Plaintiff's Claim One, Deprivation of Civil Rights, is brought under 42 U.S.C. § 1983 against the Individual Defendants in both their individual and official capacities. Doc. #3, ¶¶ 85-126, PAGEID #36-41. Plaintiff concedes that the Sheriff's Office is not *sui juris*, Doc. #17-1, PAGEID #156, 159, meaning that the entity actually being sued is Montgomery County, Ohio, which is already being sued under a theory of *Monell* liability through Plaintiff's official capacity claims against the Board of County Commissioners. Therefore, suing the Individual Defendants in their official capacities is redundant, and Plaintiff's Claim One shall proceed to discovery as against the Board in their respective official capacities, and against Individual Defendants in their respective individual capacities.

### V. SPOLIATION CLAIM IS VIABLE AT THE PLEADING STAGE

In Claim Seven, Plaintiff alleges that the Individual Defendants participated "in the destruction, concealment or spoliation of evidence favorable to the Plaintiff, in the form of documents, videos, recordings, testimony and other evidence." Doc. #3, ¶ 160, PAGEID #44. Specifically, she claims that the Individual Defendants agreed "that the videotape of Defendant Sealey spraying Plaintiff Amber Swink . . . should be

12

intentionally destroyed, along with other electronic data and reports[.]" *Id.*, ¶ 72, PAGEID #35. They did so, Plaintiff alleges, "to disrupt or destroy Plaintiff's future civil action for damages, forcing Plaintiffs [*sic*] to expend and incur further fees, costs, and other damages for recovery of damages stemming from the brutal attack of the Plaintiff." *Id.*, ¶ 161, PAGEID #44.

> [T]he elements of a claim for interference with or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]

*Smith v. Howard Johnson Co., Inc.*, 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037 (1993). Defendants argue that, in light of these statutory elements, the claim is insufficient to meet the *Iqbal* threshold, as Plaintiff does not allege that the "destruction of evidence disrupted the Plaintiff's case in any way or that there were any damages sustained due to the Defendants' actions. In fact, there could be no possible argument that the Plaintiff's case was disrupted and that Plaintiff was damaged by Defendants' actions." Doc. #15, PAGEID #118. In support, Defendants note that prior to filing the Amended Complaint, Plaintiff's counsel obtained a copy of the video at issue and sent it to the *Washington Post*, rendering implausible any argument "that the alleged destruction of video disrupted the litigation or that she was harmed by any alleged destruction of evidence[.]" *Id.*, PAGEID #118-19 n.4.

Plaintiff argues that Claim Seven is viable at the Rule 12(c) stage for three reasons. <u>First</u>, she claims that Ohio law does not allow parties who attempt to destroy evidence to escape liability simply because they were unsuccessful in doing so. Doc. #17, PAGEID #151-52 (citing *Smith*, 67 Ohio St. 3d at 29; quoting *Moskovitz v. Mt. Sinai*

13

*Med. Ctr.*, 69 Ohio St. 3d 638, 650-51, 635 N.E.2d 331 (1994), *superseded by statute on other grounds as stated in Cobb v. Shipman*, 11th Dist. Trumbull No. 2011-T-0049, 2012-Ohio-1676 (Apr. 16, 2012)). <u>Second</u>, Plaintiff's allegation that the spoliation was intended to hinder her chances of success in litigation, and with the goal of forcing her to spend additional time and money on litigation, is sufficiently plausible to satisfy *Iqbal*. *Id.*, PAGEID #153 (citing Doc. #3, ¶ 161, PAGEID #44). <u>Third</u>, the issues of whether any Use of Force Report was inadvertently lost or intentionally destroyed, or if a videotape exists of Sealey's first use of force against Plaintiff, are factual issues that are irrelevant to determining whether Plaintiff has met her burden at the pleading stage.

In their reply memorandum, Defendants argue that Plaintiff incorrectly reads *Moskovitz* to hold that a plaintiff need not plead actual damages in a spoliation claim, Doc. #18, PAGEID #165-66 (citing *Moskovitz*, 69 Ohio St. 3d at 647-48). However, the Court need not reach that issue, because Plaintiff has sufficiently pled all elements of spoliation, including damages. Even assuming that, prior to filing the Amended Complaint, Plaintiff's counsel obtained the videotape of Sealey pepper-spraying Plaintiff for a second time, counsel still expended time and resources to obtain the tape that could have otherwise been used to prepare for litigation. Moreover, the contents of the Use of Force Report and other documents, which Plaintiff claims were intentionally destroyed, may have been used by Plaintiff to add additional claims against the Individual Defendants, or to add factual allegations to her existing claims. Finally, whether the Use of Force Report or other documents were intentionally destroyed, as Plaintiff claims, or never created, as Defendants argue, is a factual dispute that cannot

14

be resolved at the pleading stage. As Defendants do not argue that Plaintiff failed to adequately plead any of the other elements for spoliation, Claim Seven may proceed.

**VI. CIVIL CONSPIRACY CLAIM NOT BARRED BY INTRACORPORATE CONSPIRACY DOCTRINE**

In Claim Six, Plaintiff alleges that the Individual Defendants, in their respective individual capacities, "associated with one another with an unlawful objective, namely, the falsification, omission and destruction of official reports and videotape evidence chronicling the assault, battery and detention of Plaintiff in the Montgomery County Jail." Doc. #3, ¶ 154, PAGEID #43. "As part of that unlawful association, Defendants formed an agreement, understanding, or 'meeting of the minds' regarding the objective and the means of pursuing it." *Id.*, ¶ 155.

Defendants argue that any civil conspiracy claim is barred by the intracorporate conspiracy doctrine, which holds that "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As the Individual Defendants were all employees of the Sheriff's Office, and Plaintiff alleges that they "were within the course and scope of their employment during all times relevant to Plaintiff's complaint," Doc. #3, ¶ 46, PAGEID #32, Individual Defendants argue that Claim Six is barred as a matter of law. Doc. #15, PAGEID #121-22. In her memorandum *contra*, Plaintiff argues that lawsuits against government employees in their individual capacities necessarily concern actions taken outside the scope of their employment, and thus, the intracorporate conspiracy doctrine

15

does not apply. Doc. #17, PAGEID #150-51 (citing *Burgess v. Fischer*, No. 3:10-cv-24, 2014 WL 1923236, at *2 (S.D. Ohio May 14, 2014) (Rose, J.)).

The plaintiff in *Burgess* brought a civil conspiracy claim against several employees of the Greene County, Ohio, Sheriff's Office in their individual capacities that arose out of the defendants' alleged falsification of documents regarding alleged mistreatment of the plaintiff while in the Greene County Jail. No. 3:10-cv-24, Doc. #1, ¶¶ 124-28, PAGEID #15. The Court denied the defendants' summary judgment motion because "Defendants have not pointed to any circumstance warranting extension of the intracorporate conspiracy doctrine to claims . . . [for which] Defendants were sued for conspiracy in their individual capacity, <u>which inherently entails actions beyond the scope of employment</u>[.]" *Burgess*, 2014 WL 1923236, at *2 (emphasis added).

*Burgess* is nearly identical factually to the instant case, and that Court's decision and rationale are consistent with Ohio law. In a *per curiam* opinion, the Sixth Circuit cited only one Ohio appellate case that had applied the intracorporate conspiracy doctrine. *Bays v. Canty*, Nos. 08-3707, 08-3735, 330 F. App'x 594 (6th Cir. 2009) (*per curiam*) (citing *Scanlon v. Gordon F. Stofer & Bros., Co.*, 8th Dist. Cuyahoga Nos. 55467, 55472, 1989 WL 69400, at *16 (Jun. 22, 1989)). Yet the Court in *Scanlon* expressly limited its holding to those instances "when the <u>officer or agent acts within the scope of his authority or position</u>. . . . To hold otherwise[,]" *i.e.*, to extend the doctrine to individual capacity claims, "would grant blanket immunity to an officer or agent of a corporation regardless of the existence of a civil conspiracy." 1989 WL 69400, at *16 (emphasis in original).

16

Even though Plaintiff's pleading was inconsistent, the Individual Defendants do not argue that intentionally destroying videotapes, Use of Force Reports and other documents—the alleged actions undertaken in furtherance of the conspiracy—are within the course and scope of their employment. Nor could they reasonably do so. *See Rachlow v. Dee*, 2d Dist. Montgomery No. 18927, 2002 WL 91288, at * 4 (Jan. 25, 2002) (refusing to apply the intercorporate conspiracy doctrine, stating that the Court "would be loathe [*sic*] to suppose that inducing a witness to give a false statement or conspiring to give a false impression, if that is really what happened, are within the scope of a Dayton police officer's duties.").

Plaintiff has plausibly alleged that the Individual Defendants formed and carried out a conspiracy, undertaking acts outside the scope of their employment in so doing. Thus, Defendants' Motion must be overruled as to Claim Six.

## VII. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Judgment on the Pleadings, Doc. #15, is SUSTAINED IN PART AND OVERRULED IN PART. Claim One is dismissed as against Crosby, Landis, Plummer and Sealey in their official capacities only. All other claims in the Amended Complaint shall proceed to discovery.

Date: August 18, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE